UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARIA REX,

      Plaintiff,

v.                                Case No: 6:17-cv-1497-Orl-DNF

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____

## OPINION AND ORDER

Plaintiff, Maria Rex, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and Disability Insurance Benefits ("DIB"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number) and the parties filed memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

Plaintiff filed an application for a period of disability and DIB on December 5, 2013, alleging a disability onset date of October 16, 2013. (Tr. 156-59). Plaintiff's claim was denied initially on January 27, 2014, and upon reconsideration on May 2, 2014. (Tr. 106-08, 113-17). At Plaintiff's request, a hearing was held before Administrative Law Judge ("ALJ") Michelle Thompson on July 20, 2016. (Tr. 44-68). On August 16, 2016, the ALJ entered a decision finding that Plaintiff was not disabled. (Tr. 18-37). Plaintiff requested review of this decision and the Appeals Council denied Plaintiff's request on June 19, 2017. (Tr. 1-6). Plaintiff initiated this case by Complaint (Doc. 1) on August 16, 2017. The parties having filed memoranda setting forth their respective positions, this case is ripe for review.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff engaged in substantial gainful activity through December 5, 2013, the application date, but there was a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity. (Tr. 20). The ALJ stated that her remaining findings address the period in which Plaintiff did not engage in substantial gainful activity. (Tr. 20). At step two, the ALJ found that Plaintiff had the following severe impairments: mastocytosis, degenerative disc disease, post-laminectomy syndrome of the

cervical spine, carpal tunnel syndrome, migraines, obesity, posttraumatic stress disorder (PTSD), obsessive compulsive disorder (OCD), social phobia, and depression. (Tr. 20). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> lift frequently 10 pounds, occasionally up to 20 pounds; can stand and/or walk for a total of 6 hours in an 8-hour workday, sit for a total of 6 hours; can occasionally climb ramps and stairs, never ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; the person is right-handed and with the right hand, she can frequently twist, turn, raise and lower objects, and frequently grasp and perform hand-to-finger repetitive action; can understand and carry out simple and detailed instructions and tasks; can maintain, concentration, persistence, and pace for 2 hours at a time over an 8-hour workday; can interact occasionally with co-workers and supervisors but cannot work directly with the general public; can adapt to infrequent changes in the workplace; and must avoid all exposure to fumes, dusts, odors, and other pulmonary irritants.

(Tr. 22). At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a medical records clerk, office manager, or medical assistant. (Tr. 28).

At step five, the ALJ found that considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in the national economy in significant numbers that Plaintiff can perform. (Tr. 28). Relying on the testimony of the vocational expert, the ALJ found that Plaintiff could perform such jobs as marker, router, and bottling line attendant. (Tr. 29). The ALJ concluded that Plaintiff was not under a disability from October 16, 2013, through the date of the decision, August 16, 2016. (Tr. 36).

## II. Analysis

Plaintiff raises three issues on appeal: (1) whether the ALJ erred by failing to provide good cause for rejecting the opinion of Dr. George; (2) whether the ALJ erred by failing to provide good cause for rejecting the opinion of Dr. Krotenberg; and (3) whether the ALJ erred by rejecting Plaintiff's testimony. The Court will address each issue in turn.

### A. Whether the ALJ erred by failing to provide good cause for rejecting the opinion of Dr. George.

Plaintiff argues that the ALJ erred by failing to give sufficient weight to the opinion of Plaintiff's primary care physician Dr. Malika George. (Doc. 16 p. 16). Plaintiff contends that the reasons the ALJ offered for assigning Dr. George's opinion little weight are not supported by substantial evidence. (Doc. 16 p. 16). For example, Plaintiff argues that contrary to the ALJ's assertion, Dr. George's opinion is not inconsistent with the medical evidence. (Doc. 16 p. 17). Likewise, Plaintiff argues that the ALJ's assertions that Plaintiff's symptoms have improved with treatment and that Dr. George's opinions are inconsistent with Plaintiff's testimony and reported exercise, are not supported by substantial evidence. (Doc. 16 p. 18-19). In response, Defendant argues that substantial evidence supports the ALJ's consideration of Dr. George's opinion. (Doc. 17 p. 6).

The record shows that Plaintiff treated with Dr. George in August of 2013. (Tr. 561). Dr. George noted that Plaintiff was suffering from several chronic conditions, including mastocytosis; cervical radiculopathy; anxiety/obsessive-compulsive disorder, and migraines. (Tr. 51). Plaintiff acknowledged that her flares of mastocytosis had improved after she started cromolyn, but she was still experiencing one flare a week, which lasted for about two days. (Tr. 561). A physical examination showed that Plaintiff was well developed and had normal respiratory and

cardiovascular findings. (Tr. 564). She was alert and oriented, and did not display any unusual anxiety. (Tr. 564).

In October of 2013, Plaintiff told Dr. George that she was still having flare-ups of her mastocytosis once a week. (Tr. 705). She also reported a recent allergic reaction where she needed to use an EpiPen. (Tr. 705). Dr. George directed Plaintiff to take gastrocom and antihistamines for her mastocytosis. (Tr. 707-08).

In February of 2014, Plaintiff told Dr. George that she was having three to four flare-ups of her mastocytosis per week. (Tr. 1070). She had quit her job and was planning to start counseling for her anxiety and other psychiatric issues. (Tr. 1070). She requested refills of her medications. (Tr. 1070).

In May of 2014, Plaintiff told Dr. George that she had recently gained 30 pounds. (Tr. 1074). Associated symptoms included diaphoresis, fatigue, insomnia, and night sweats. (Tr. 1074). She noted that she had needed to use an EpiPen several times because the heat was causing her mastocytosis to flare up. (Tr. 1074).

In October of 2014, Plaintiff told Dr. George that her mastocytosis had been better controlled since she had stopped working because she could now take antihistamines. (Tr. 1194). She was also being treated for restless leg syndrome and allergic asthma. (Tr. 1194). A physical examination showed that Plaintiff's lungs were clear, and a visual overview of her extremities was normal. (Tr. 1195). She was oriented to time, person, and place, and displayed an appropriate mood and affect. (Tr. 1195). Dr. George advised Plaintiff to continue taking her medications. (Tr. 1196). From October of 2014 through December of 2014, Plaintiff had additional injections for her neck pain. (Tr. 1092, 1109, 1170-87).

In February 2015, Plaintiff told Dr. George that her mastocytosis was stable on antihistamines and gastrocom. (Tr. 1198, 1535). She did have one episode where she needed to use her EpiPen, and her doctors had found a tumor in her jaw. (Tr. 1198, 1535.). Plaintiff also complained of acute sinus symptoms. (Tr. 1198, 1535). A physical examination was within normal limits. (Tr. 1200, 1537). Dr. George directed Plaintiff to continue her current medication regimen. (Tr. 1200, 1537).

In June of 2015, Plaintiff told Dr. George that she continued to have episodes of mastocytosis, with two flare-ups of her symptoms per week. (Tr. 1530). She needed a refill of her Singulair. (Tr. 1530).

In September of 2015, Dr. George noted that Plaintiff was still having her "usual" two flares of mastocytosis. (Tr. 1526). She was still fatigued but had been working out more. (Tr. 1526.). She reported doing "cross fit" at home for the past three weeks. (Tr. 1526). Dr. George observed that Plaintiff had normal respiratory functioning, and a visual overview of her arms and legs did not reveal any abnormalities. (Tr. 1527). Plaintiff was oriented to time, person, and place, and had a normal mood and affect. (Tr. 1527). Dr. George's assessment included mastocytosis and fatigue/malaise. (Tr. 1527).

In April of 2016, Plaintiff told Dr. George that she was having three flares of mastocytosis per week, with nausea, diarrhea, low blood pressure, vomiting, and a rash. (Tr. 1518). She had not had an anaphylactic reaction during the past year. (Tr. 1518). Plaintiff acknowledged that her mental health symptoms were "very stable" and that she had started coloring and painting. (Tr. 1518).

Dr. George filled out a medical source statement describing how Plaintiff's impairments limit her ability to work. (Tr. 1342-45). The doctor observed that Plaintiff's pain and other

symptoms would frequently interfere with her attention and concentration in the workplace. (Tr. 1343). Dr. George also wrote that Plaintiff is incapable of performing even "low stress" jobs because stress will cause Plaintiff's mastocytosis to flare up. (Tr. 1343). The doctor noted that Plaintiff was limited to four hours of sitting and four hours of standing or walking in an eight-hour workday. (Tr. 1344). Finally, Dr. George found that Plaintiff would miss four days or work or more per month due to her impairments or her need for treatment. (Tr. 1345).

In her decision, the ALJ explained the weight she assigned to Dr. George's opinion as follows:

> Finally, the undersigned gives little weight to the medical source statement provided by Dr. Malika George in April 2016 because it is not supported by objective medical evidence and it is inconsistent with the record as a whole. For example, Dr. George opined the claimant could only sit for a total of 4 hours during a normal 8-hour workday, yet the claimant actually testified at the hearing that she did not have any difficulty sitting. Not to mention, the record shows the claimant reported in September 2015 that she had been "doing cross fit at home for about three weeks", which seems particularly unusual for an individual who is unable to sit for more than four hours in a normal workday (Ex. 52F). In fact, Dr. George's medical opinion is inconsistent with her own examination findings, which the record shows were routinely unremarkable (Ex. 20F, 35F, 40F, and 52F).

(Tr. 27-28).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a

statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has held that good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

In this case, the Court finds that the ALJ decision to assign little weight to Dr. George's opinion is supported by substantial evidence. Contrary to Plaintiff's arguments, the ALJ properly provided good cause for not crediting Dr. George's opinion. The ALJ gave Dr. George's opinion little weight because it was not supported by the objective medical evidence and it was inconsistent with the record as a whole. (Tr. 27). The ALJ properly found that Dr. George's opinion was inconsistent with her own findings, which were routinely unremarkable. The substantial evidence of record supports these reasons. For example, in November 2013, a physical examination was normal. (Tr. 702-703, 1067-68). In addition, in May and July 2014, Plaintiff indicated to Dr. George that her pain was 0/10 and her examination was normal. (Tr. 1076, 1081). In September and October 2017, Plaintiff also had a normal examination. (Tr. 1192, 1195). In addition, in February 2015, Dr. George indicated Plaintiff's mastocytosis was stable with her current medication and she had a normal examination. (Tr. 1198, 1200, 1535). In April 2015, Plaintiff

reported to Dr. George that she had been hospitalized and without her mastocytosis medications, however, her pain was 0/10 and she had another normal examination. (Tr. 1522-24). In June 2015, Plaintiff reported to Dr. George she was having two flares a week due to mastocytosis, which was an improvement, and that her pain was 0/10. (Tr. 1530-32).

In addition, as discussed by the ALJ, Dr. George's opinion is inconsistent with the other evidence of record. (Tr. 27-28). As noted by the ALJ, a March 2013 MRI of Plaintiff's lumbar spine was unremarkable. (Tr. 23, 495). In addition, she had only mild bulging at C5-6 superior to a previous fusion level, but there was no significant neurocompressive pathology. (Tr. 506). After reviewing the MRIs and completing an examination, G. Grady McBride, M.D., recommended a home cervical traction unit and stretching exercise program with a trainer and only limited her to avoiding physical exercise, running, or jogging. (Tr. 506). In December 2013, Eugene A. Melvin, M.D., indicated that Plaintiff's right neck pain was very responsive to the injection he received a month earlier and was given another injection. (Tr. 783). In August and September 2014 and January 2015, Roberto Santos, M.D., indicated Plaintiff had a normal examination, including with no bony deformities in her upper and lower extremities and no kyphoscoliosis of the spine. (Tr. 1158-59, 1162, 1168).

As discussed by the ALJ, the state agency physician's opinion also supports the ALJ's decision to give Dr. George's opinion little weight. (Tr. 26). In May 2014, Minal Krishnamurthy, M.D., reviewed the evidence and opined Plaintiff could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, stand and/or walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday. (Tr. 98). Dr. Krishnamurthy also opined Plaintiff could occasionally climb ramps/stairs/ladders/ropes/scaffolds, balance, stoop, kneel, crouch, and crawl and he was limited with handling and fingering with his right hand. (Tr. 98-99). State agency

consultants are highly qualified specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. § 404.1527(e)(2)(i). The ALJ gave great weight to Dr. Krishnamurthy's opinion great weight because it was well supported and consistent with the record as a whole. (Tr. 26).

The ALJ also correctly found that other evidence did not support Dr. George's opinion that Plaintiff could only sit for four hours in an eight-hour workday. (Tr. 28). For example, the ALJ pointed out that in September 2015 Plaintiff indicated she had been doing a cross fit exercise program at her home for about three weeks. (Tr. 1526). The ALJ was correct in noting that a rigorous workout program such as cross fit is inconsistent with Dr. George's restrictive opinion. (Tr. 28). In addition, the ALJ properly noted that Plaintiff's own testimony was that she did not have any difficulty sitting. (Tr. 28, 56-57).

The ALJ's reasons for assigning little weight to Dr. George's opinion constitute good cause. Accordingly, the Court rejects Plaintiff's argument that the ALJ erred in her treatment of Dr. George's opinion.

**B. Whether the ALJ erred by failing to provide good cause for rejecting the opinion of Dr. Krotenberg.**

Plaintiff argues that the ALJ erred by failing to provide good cause for assigning little weight to the opinions of treating psychiatrist Jeffrey Krotenberg, D.O. (Doc. 16 p. 19-20). Plaintiff contends that substantial evidence does not support the ALJ's finding that Dr. Krotenberg gave undue deference to Plaintiff's subjective complaints. (Doc. 16 p. 19). Plaintiff argues that the record shows objective corroboration of Dr. Krotenberg's opinion, such as Plaintiff's unwillingness to shake hands, inability to sit with her back to the door, anxiety during appointments, and inability to shop during normal daytime hours. (Doc. 16 p. 20). In response,

Defendant contends that substantial evidence supports the ALJ's consideration of Dr. Krotenberg's opinions. (Doc. 17 p. 8).

The record shows that during 2011, Plaintiff was treated by Dr. James Krotenburg. In March of 2011, the doctor noted that Plaintiff was suffering from obsessive-compulsive disorder. (Tr. 494). Her mood was anxious, and her attention and concentration were decreased. (Tr. 494). Her speech and thought processes were normal. (Tr. 494). Over the next few months, Plaintiff continued to present with an anxious mood, and complained of insomnia. (Tr. 491-93).

During 2013, Plaintiff continued to have regular appointments with her psychiatrist, Dr. Krotenburg. (Tr. 568-78). The doctor's notes reflect that Plaintiff continued to suffer from obsessive-compulsive disorder. (Tr. 568-78). Her mood was typically anxious, but her speech and thought processes were intact. (Tr. 568-75, 577-58). Dr. Krotenburg prescribed medications, including Zoloft and Buspar. (Tr. 578).

During 2014, Plaintiff also continued to follow up with Dr. Krotenburg for treatment of her obsessive-compulsive disorder. (Tr. 1055-64). Her mood continued to be anxious, but her speech and thought processes were intact. (Tr. 1055-64). The doctor prescribed Luvox to treat Plaintiff's symptoms. (Tr. 1056, 1058, 1062).

In June of 2014, Dr. Krotenburg prepared a letter describing Plaintiff's mental health limitations. (Tr. 1048). The doctor noted that Plaintiff suffers from a panic disorder; generalized anxiety disorder; post-traumatic stress disorder; and severe obsessive-compulsive disorder. (Tr. 1048). The doctor wrote that Plaintiff has intrusive ruminations about being exposure to infectious agents, to the point that she becomes paralyzed in her activities. (Tr. 1048). Dr. Krotenburg observed that Plaintiff is unable to interact appropriately with others; cannot conform to a schedule; and cannot remain on task. (Tr. 1048). He noted that Plaintiff "basically stays at home

with her blinds shut" and "won't open the door." (Tr. 1048). The doctor noted that Plaintiff "has a GAF of 52 and in my opinion is currently totally disabled despite her current medication regimen as well as past trials that have been only partially effective." (Tr. 1048).

In February 2015, Dr. Krotenberg indicated on a form that Plaintiff was "totally and permanently disabled but does not require a wheelchair for mobility." (Tr. 1326).

In June 2016, Dr. Krotenburg also submitted a medical opinion in support of Plaintiff's claim for benefits. (Tr. 1510-14). The doctor wrote that Plaintiff's obsessive-compulsive disorder was severe and resistant to treatment. (Tr. 1510). Notable signs and symptoms included appetite disturbance; decreased energy; feelings of guilt or worthlessness; generalized, persistent anxiety; mood disturbance; difficulty thinking or concentrating; apprehensive expectation; persistent disturbances of mood or affect; recurrent obsessions or compulsions that were a source of distress; motor tension; and easy distractibility. (Tr. 1511). Dr. Krotenburg wrote that Plaintiff was unable to meet competitive standards or had no useful abilities in most functional areas. (Tr. 1512-13). Finally, the doctor noted that Plaintiff would miss more than four days of work per month due to her impairments. (Tr. 1514).

In her decision, the ALJ explained the weight she assigned to Dr. George's opinion as follows:

> The undersigned also gives little weight to the various medical opinions provided by Dr. Jeffery Krotenberg (Ex. 32F, 43F, and 51F) because they are too heavily based upon the claimant's subjective self-reports and complaints of symptoms rather than objective medical findings and they are inconsistent with the longitudinal record. For example, Dr. Krotenberg opined in both June 2014 and June 2016 that the claimant was utterly incapable of interacting with coworkers, supervisors, or the general public due to her mental impairments (Ex. 32F and 51F). However, although the claimant's ability to interact with others does appear to be limited, Dr. Krotenberg certainly appears to be grossly overstating the severity of this limitation based on the various descriptions of the claimant found throughout the record ("pleasant, friendly", "did appropriately behaviorally engage this examiner", "very pleasant 37 year old female", etc.) (Ex. 13F, 49F, and 53F). Likewise, in

- 14 -

> providing some context to support his opinion that the claimant was "currently totally disabled", Dr. Krotenberg reported in June 2014 that the claimant "basically stays at home with her blinds shut", "won't open the door", and "avoids driving (Ex. 32F)." Yet, the record shows the claimant reported in a Function Report completed in December 2013 that she does drive and she goes outside at least twice a day to walk her kids to/from their bus stop (Ex. 6E). In fact, the claimant testified at the hearing that she shops in stores, which clearly shows she does leave her house and is able to interact with the general public on at least a superficial basis.

(Tr. 27).

As noted above, the opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips,* 357 F.3d at 1240. In this case, the Court finds the ALJ provided good cause, supported by substantial evidence, for assigning only little weight to Dr. Krotenberg's opinion. The ALJ properly gave Dr. Krotenberg's opinions little weight because they rely on Plaintiff's subjective self-reports, which are not an acceptable basis for an opinion (Tr. 27). See 20 C.F.R. § 404.1527(c); *Crawford*, 363 F.3d at 1159-60. The ALJ correctly pointed out that while Plaintiff's interactions with others may be somewhat limited, Dr. Krotenberg's opinion grossly overstates her limitations in that area. (Tr. 27). For example, as noted by the ALJ, in July 2013, a mental status exam showed that while Plaintiff's demeanor was anxious and nervous, she was also pleasant, friendly, and interested in the proceedings. (Tr. 27, 527). Plaintiff also indicated that she rides in a car, is able to drive, even if very rarely, and walks her kids to the bus stop. (Tr. 57, 224, 226). This is contrary to Dr. Krotenberg's notation that Plaintiff was totally disabled and staying at home with her blinds shut, not opening the door, and not driving. (Tr. 1048).

In addition, the ALJ noted that despite the extremely severe symptoms described in Dr. Krotenberg's opinion, the record does not indicate that Plaintiff had any inpatient mental health treatment or any periods of decompensation since her alleged onset date. (Tr. 25). In addition, as

noted by the ALJ, Plaintiff denied anxiety and depression and had appropriate mood and affect on multiple occasions. (Tr. 25, 544, 703, 707, 712, 1518, 1162, 1167).

Further, the opinion of the state agency psychological consultant also supports the ALJ's consideration of Dr. Krotenberg's opinion. (Tr. 26). In April 2014, Thomas Conger, Ph.D., reviewed the evidence and opined Plaintiff had adequate understanding and memory skills to perform work-related activities adequately, she is capable of performing routine tasks on a sustained basis, she may have some social difficulties as well as a negative reaction to criticism at times but she has the ability to relate effectively in general, and she has adaptation abilities to function effectively within a work setting. (Tr. 102). The ALJ gave great weight to Dr. Conger's opinion as an expert in Social Security disability programs and because his opinion was consistent with the other evidence of record. *See* 20 C.F.R. § 404.1527(e)(2)(i).

### C. Whether the ALJ erred by rejecting Plaintiff's testimony.

Plaintiff argues that the record does not support any of the reasons that the ALJ offered for rejecting Plaintiff's testimony. (Doc. 16 p. 21). Plaintiff contends that contrary to the ALJ's findings, the objective medical findings are consistent with and support Plaintiff's testimony. (Doc. 16 p. 21). Plaintiff argues that while the ALJ was able to cite to a number of examinations stating that Plaintiff was doing well or had normal examination findings, the ALJ should have taken a broader view of the evidence and considered Plaintiff's course of treatment for most serious impairments, i.e., cervical degenerative disc disease and mastocytosis. (Doc. 16 p. 22). Further, Plaintiff argues that the ALJ wrongly suggested that Plaintiff's testimony was inconsistent with her activities of daily living. (Doc. 16 p. 23). In response, Defendant argues that the ALJ properly considered Plaintiff's subjective statements, together with the other evidence, in assessing her RFC. (Doc. 17 p. 11).

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)). After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed to determine if it is based on substantial evidence. *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so. [citations omitted] Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson v. Barnhart*, 284 F.3d at 1225. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)). The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are: "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno v. Astrue*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)).

In this case, upon review of the ALJ's decision, the Court finds no error in her finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 23). Contrary to Plaintiff's contention, the ALJ's decision shows that she did not merely highlight

random normal findings, but engaged the record as a whole and presented a thorough analysis across nearly six pages explaining her reasoning for finding Plaintiff's subjective complaints not entirely credible. (Tr. 22-28). Plaintiff has failed to demonstrate that the ALJ erred in her analysis of Plaintiff's subjective symptoms and, according, the Court will not disturb the ALJ's findings upon review.

### III. Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 21, 2018.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties